**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-03498 |
| v. | ) | |
| NATIONAL UNIVERSITY, | ) | Honorable Sharon Johnson Coleman |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS**

Plaintiff Janielle Dawson ("Plaintiff") filed this boilerplate putative class action against National University ("NU") even though she expressly agreed—twice—to NU's Enrollment Agreement, bound herself to resolve "any dispute … arising out of or relating to" her application or enrollment exclusively in individual arbitration, and waived any right to pursue a class, collective, or representative action. The Federal Arbitration Act ("FAA") and controlling Supreme Court precedent leave no room for evasion: Once a consumer manifests clear assent, courts must enforce the arbitration clause and the class-action waiver as written. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the FAA preempts California's rule deeming class arbitration waivers in consumer contracts unconscionable); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (holding that the FAA requires enforcement of arbitration agreements waiving class or collective actions, including in employment contexts).

Here, the assent is unmistakable. During both her initial June 2023 enrollment and her December 2024 re-application, Plaintiff confronted a conspicuous screen that (i) hyper-linked the full Enrollment Agreement and privacy policy, (ii) required her to toggle a default "No" to "Yes,"

and (iii) warned—in bold font—that doing so meant she had read the Enrollment Agreement and would "abide by" all its policies, including the arbitration clause and class waiver. Under the Seventh Circuit's decision in *Sgouros v. TransUnion*, that affirmative click constitutes binding assent; subjective after-the-fact regrets do not undo the bargain. 817 F.3d 1029, 1033-34 (7th Cir. 2016).

Despite those commitments, Plaintiff now seeks to litigate on behalf of a nationwide class, asserting claims pursuant to the Video Privacy Protection Act of 1998, 18 U.S.C. § 2710, *et seq.* ("VPPA") and state and federal eavesdropping laws predicated on the purported usage of commonplace analytics and targeted advertising tools on NU's website.[1] The formulaic and conclusory nature of this pleading is underscored by Paragraphs 44 and 99, which still refer to "University of Phoenix"—a clear holdover from another boilerplate complaint filed by Plaintiff on the same day against another institution she attended.[2] Nonetheless, because these recycled complaint allegations "arise[] out of or relate[] to" her application to, enrollment at, and online interaction with NU, the FAA requires this Court to: (1) strike the class allegations; (2) compel individual arbitration; and (3) stay or dismiss the action pending that arbitration. Anything less would contravene the parties' contract and the strong federal policy favoring swift, individualized arbitral resolution of such disputes.

---

[1] Plaintiff also alleges purported violations of the Electronic Communications and Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA"); the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.* ("CIPA"); and the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.* All of Plaintiff's claims are based on the same information-sharing theory underpinning the VPPA claim.

[2] *See Dawson v. The University of Phoenix, Inc.*, No. 1:25-CV-03497 (N.D. Ill.).

## FACTUAL BACKGROUND

### I. Plaintiff's enrollment at NU required her to affirmatively agree to the Enrollment Agreement and NU's privacy policy.

To initiate the enrollment process, students are required to speak with an Enrollment Advisor, who serves as a guide through the completion of the application and scheduling of courses. Ex. A (Decl. of Megan Hall) ¶ 5. After speaking with an Enrollment Advisor, prospective students can create an account with NU and begin the application process online. *Id.* ¶ 6. In 2023, prospective students were required to acknowledge specific disclosures contained within the enrollment application. *Id.* ¶ 7. This section was entitled "Disclosures & Agreements," and students were directed to "read the disclosures and agreements below and select your options before proceeding." *Id.* Relevant portions of the "Disclosures & Agreements" page in June 2023 appeared as follows:

> By selecting "Yes", I acknowledge that I have read and will abide by the policies outlined in the enrollment agreement located on the University's website at https://assets.nu.edu/docs/NU-Enrollment-Agreement.pdf. I am also aware that the current University General Catalog is located on the University's website at https://www.nu.edu/OurPrograms/Catalog.html, the Student Consumer Information is located on the University's website at https://www.nu.edu/consumerinfo, and these documents are readily accessible to all students and the general public.

> By submitting this form, I confirm that the information provided on this form is accurate and complete and I agree to receive email communications, phone calls, and SMS/Text Messages about Educational opportunities from National University System and/or its affiliates. I understand that I may withdraw my consent at any time. I understand that if I am submitting my personal data from outside of the United States, I am consenting to the transfer of my personal data to, and its storage in, the United States, and I understand that my personal data will be subject to processing in accordance with U.S. laws. Please review our privacy policy or contact us for more details at dataprotection@nu.edu.

*Id.* ¶ 8.

As shown above, prospective students were required to separately and affirmatively agree to: (i) "all the policies and procedures of [NU]"; (ii) the NU Enrollment Agreement in effect in June 2023 (hereafter, the "2023 Enrollment Agreement"), which was provided via hyperlink; and (iii) the processing of personal information in accordance with NU's privacy policy, also made available by hyperlink. *Id.* ¶ 9. Put differently, prospective students were required to affirmatively

acknowledge these disclosures and agree to the 2023 Enrollment Agreement by toggling a default "No" button to "Yes" for each of these, including at the time Plaintiff enrolled in June 2023. *Id.* ¶ 9. By toggling the button to "Yes" for the statements above, prospective students accepted the 2023 Enrollment Agreement and consented to the processing of their personal information in accordance with NU's privacy policy. *Id.* ¶ 10.

After consultation with an Enrollment Advisor, Plaintiff began the enrollment process at NU. Specifically, she spoke with an Enrollment Advisor, selected her program, and completed the enrollment application. *Id.* ¶ 16. During the enrollment process, Plaintiff affirmatively agreed to the 2023 Enrollment Agreement and the processing of her information in accordance with NU's privacy policy. *Id.* ¶ 17. Specifically, NU's records confirm that on June 23, 2023, Plaintiff affirmatively toggled "Yes" for all statements in the "Disclosure & Agreements" section of her application. The two relevant disclosures are displayed below and in Paragraph 8 of the concurrently filed Declaration, which indicated Plaintiff's agreement to the 2023 Enrollment Agreement and consent to the processing of her personal information in accordance with NU's privacy policy. *Id.* ¶¶ 8, 17.

By selecting "Yes", I acknowledge that I have read and will abide by the policies outlined in the enrollment agreement located on the University's website at https://assets.nu.edu/docs/NU-Enrollment-Agreement.pdf. I am also aware that the current University General Catalog is located on the University's website at https://www.nu.edu/OurPrograms/Catalog.html, the Student Consumer Information is located on the University's website at https://www.nu.edu/consumerinfo, and these documents are readily accessible to all students and the general public.

I understand and acknowledge the statements above. No

By submitting this form, I confirm that the information provided on this form is accurate and complete and I agree to receive email communications, phone calls, and SMS/Text Messages about Educational opportunities from National University System and/or its affiliates. I understand that I may withdraw my consent at any time. I understand that if I am submitting my personal data from outside of the United States, I am consenting to the transfer of my personal data to, and its storage in, the United States, and I understand that my personal data will be subject to processing in accordance with U.S. laws. Please review our privacy policy or contact us for more details at dataprotection@nu.edu.




After failing to abide by the University's attendance policies, Plaintiff applied for re-entry into NU's online undergraduate psychology program on December 3, 2024. *Id.* ¶ 18. As part of the re-application process, Plaintiff was required to submit a re-entry application and execute a new enrollment agreement. *Id.* ¶ 19. By December 2024, National University had updated its enrollment procedures, including the method by which prospective students assented to the terms of the enrollment agreement. *Id.* Under the revised process, prospective students were required to sign the enrollment agreement, which contained an arbitration provision and an acknowledgment of the student's obligation to comply with all University policies. *Id.* ¶ 20. On December 2, 2024, Plaintiff signed the updated enrollment agreement (hereafter, the "2024 Enrollment Agreement"), including a section containing the arbitration provision and class waiver that were identical to the 2023 Enrollment Agreement. *Id.* ¶ 21; Hall Decl. (Ex. A-2). Upon signing the 2024 Enrollment Agreement, an audit report was generated showing precisely when Plaintiff signed the agreement. *Id.* ¶ 22; Hall Decl. (Ex. A-3).

## II. Both the 2023 and 2024 Enrollment Agreements requires arbitration on an individual basis.

Both the 2023 and 2024 Enrollment Agreements that Plaintiff accepted in June 2023 and December 2024 both contained an identical arbitration provision and class waiver as follows:

> **<u>Arbitration Clause</u>.**
>
> THIS AGREEMENT TO ARBITRATE LIMITS CERTAIN RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS OR JOINT CLAIM, THE RIGHT TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES, AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. OTHER RIGHTS THAT STUDENT OR THE UNIVERSITY WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

Ex. A-1 & A-2 at 8-9. This same arbitration clause subsequently provides as follows:

- "[A]ll disputes, claims, or controversies arising out of or relating in any way to this [Enrollment] Agreement or your application or enrollment at NU shall be settled by binding arbitration." *Id.* at 9.
- Both parties explicitly "waive all right to have such disputes resolved by a court or jury." *Id.*
- Arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16). *Id.*
- Arbitration will be conducted solely on an individual basis.

Following the discussion of the arbitration requirements, the same provision also includes a class action waiver:

- Both parties explicitly "waive any right to bring or participate in any class, representative or collective action." For the avoidance of doubt, the Enrollment Agreement then reiterates that the student is "agreeing to waive any substantive or procedural rights [he or she] may have to sue on a class, representative or collective basis." *Id.*
- No arbitrator or court has the authority to order class, collective, or representative actions in arbitration. Any determination regarding the enforceability of this waiver must be made by a court. *Id.*

As part of the 2024 enrollment process, Plaintiff also electronically signed a copy of the 2024 Enrollment Agreement via DocuSign and initialed the arbitration provision. Hall Decl. ¶ 21; Ex. A-2 at 10, 12.

**III. Plaintiff filed a Class Action Complaint for unspecified injuries and disclosures.**

On April 1, 2025, Plaintiff filed a putative class action complaint alleging that NU violated the VPPA, ECPA, CIPA, and the Illinois Eavesdropping Act by embedding various commonplace

third-party tracking technologies—such as Meta Pixel, Google Analytics, TikTok Tracking Pixel, Hotjar, Microsoft, and Amazon trackers—into its website. These technologies, according to Plaintiff, captured and transmitted information regarding her interactions with the website, including personally identifiable information (PII), educational records, and details about her video viewing habits, to external third parties.

## LEGAL STANDARD

Federal and Illinois law both strongly favor the arbitration of disputes and the enforcement of arbitration agreements. The FAA reflects "both a liberal federal policy favoring arbitration ... and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citations omitted). The Illinois Uniform Arbitration Act, 710 ILCS 5/2, contains "essentially the same" language and preference for arbitration as the FAA. *Gillispie v. Village of Franklin Park*, 405 F. Supp. 2d 904, 909 (N.D. Ill. 2005).

Courts deciding motions to compel arbitration apply a summary judgment standard under Federal Rule of Civil Procedure 56. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). The party seeking to compel arbitration "bears the initial burden to show that an arbitration agreement exists." *Id.*

## ARGUMENT

Plaintiff unequivocally manifested assent to the Enrollment Agreement—and specifically, the arbitration clause—on two separate occasions—when she affirmatively toggled a button from "no" to "yes" during both enrollment processes, including electronically executing the 2024

Enrollment Agreement. Under Illinois law, either of these actions was sufficient, standing alone, to create a valid and enforceable agreement requiring arbitration of her claims.

Plaintiff's allegations—though broadly framed and sparse in detail—clearly fall within the expansive scope of the arbitration provision contained within both agreements, which explicitly covers "all disputes, claims, or controversies arising out of or relating in any way to" Plaintiff's relationship with NU, including her application, enrollment, and participation in educational services. Ex. A-1 & A-2 at 9. Plaintiff's claims center entirely on interactions occurring through NU's online platform, which Plaintiff accessed in connection with applying to, enrolling in, and participating in coursework, thus directly implicating her contractual relationship with NU as governed by each applicable enrollment agreement. Even accepting Plaintiff's limited factual assertions as true, the challenged actions—the alleged tracking and disclosure of information through NU's website—necessarily relate to her application to, and ongoing engagement with, NU's educational offerings and services, placing her claims squarely within the arbitration clause's broad mandate.

Because Plaintiff clearly agreed to arbitrate all disputes arising from or relating to her application to NU and subsequent enrollment, including a waiver of class action claims, the Court should dismiss Plaintiff's class claims, compel arbitration, and stay these proceedings accordingly.

## I. The FAA requires enforcement of the Parties' Arbitration Agreement.

Plaintiff's VPPA and related eavesdropping claims are subject to mandatory arbitration. The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344.

This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA applies to any arbitration agreement that is "written" and "involv[es] commerce." 9 U.S.C. § 2. Both requirements are met here. The Enrollment Agreement arbitration provision is in writing, and "the Internet is an instrumentality and channel of interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *see also United States v. Borrero*, 771 F.3d 973, 975 (7th Cir. 2014) (same).

In order to compel Plaintiff to arbitrate her claims, this Court must determine whether: (1) there is an enforceable agreement to arbitrate; and (2) the claims fall within the scope of the agreement. *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1003 (N.D. Ill. 2012) (citing *Granite Rock Co. v. Int'l Bd. of Teamsters,* 130 S. Ct. 2847, 2856 (2010); *Janiga v. Questar Capital Corp*., 615 F.3d 735, 738 (7th Cir. 2010)). Both of these requirements are met here.

**A. The 2023 Enrollment Agreement constitutes a valid agreement between Plaintiff and NU.**

The Supreme Court and the Seventh Circuit have mandated enforcement of written (though not signed) arbitration agreements formed through applicable contract law principles. *Concepcion*, 563 U.S. at 353-54; *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710-11 (7th Cir. 2019). Broad "arising out of or relating to" language in an arbitration agreement creates a presumption of arbitrability that requires any doubts concerning the scope of arbitrable issues to be resolved in favor of arbitration. *Gore v. Alltell Communications, LLC,* 666 F.3d 1027, 1033-34 (7th Cir. 2012).

Under Illinois law,[3] a valid and enforceable contract requires a manifestation of agreement

[3] State law determines whether a contract was formed for purposes of subsequently enforcing an arbitration provision. *Tamburo v. Hyundai Motor Am. Corp.*, No. 23-CV-00282, 2024 WL 22230, at *3 (N.D. Ill. Jan. 2, 2024) (citing

or mutual assent by the parties to its terms. *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016). Illinois courts consistently hold that mutual assent can be established electronically through a clearly disclosed and affirmatively acknowledged "clickwrap" agreement. *Ambrosius v. Chicago Athletic Clubs, LLC*, 203 N.E.3d 239, 250 (Ill. App. Ct. 2021). Unlike a browsewrap agreement—which merely posts terms passively online without requiring affirmative assent—a clickwrap agreement provides clear notice and requires active consent. An "electronic 'click' can suffice to signify the acceptance of a contract," and so courts have generally upheld clickwrap agreements provided "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros*, 817 F.3d at 1033-34; *see also Sherman v. AT & T Inc.*, 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) ("'[S]ignif[ying] agreement by clicking on a box on the screen' is 'common in Internet commerce.'").

Here, Plaintiff unequivocally manifested assent to the 2023 Enrollment Agreement through precisely such a clickwrap process. Plaintiff was explicitly presented with the 2023 Enrollment Agreement, which included an arbitration clause and class waiver, and was required to affirmatively decide whether to agree by toggling a consent button from "no" to "yes" before being permitted to continue. This explicit, affirmative action gave Plaintiff unmistakable notice that proceeding meant agreeing to the Enrollment Agreement terms. Plaintiff could not inadvertently agree, as her enrollment depended on actively toggling each disclosure to "yes," including separate acknowledgments of both the Enrollment Agreement and NU's privacy policy on two different occasions (in June 2023 and December 2024). Such deliberate conduct meets—and indeed

---

*Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010)); *see also James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (The Court relies on "state contract law governing the formation of contracts" to determine whether a written arbitration agreement exists between the parties.).

exceeds—the notice and assent standards established in *Sgouros* and *Ambrosius*. Finally, even if there were any question—and there is not—as to whether Plaintiff agreed to the 2023 Enrollment Agreement, Plaintiff also explicitly agreed to and signed the 2024 Enrollment Agreement, including initialing the arbitration provision. *See* Ex. A-2.

Because the Enrollment Agreement and arbitration provision were both conspicuous and easily accessible through clearly labeled hyperlinks accompanying the toggle, Plaintiff cannot credibly claim a lack of notice or consent. Illinois courts consistently reject attempts to evade arbitration based on subjective claims that a plaintiff did not read or fully understand the terms, emphasizing that affirmative actions objectively establish assent. *Ambrosius*, 203 N.E.3d at 250. Plaintiff's claims, therefore, fall squarely within the scope of the Enrollment Agreement's arbitration provision, which covers all disputes or controversies arising from or relating to Plaintiff's application, enrollment, or educational relationship with National University.

Accordingly, this Court should enforce the arbitration provision and compel Plaintiff to pursue her claims through binding individual arbitration.

**B. Plaintiff agreed to arbitrate all claims arising out of or relating in any way to her application or enrollment at NU.**

Plaintiff's claims fall squarely within the scope of the arbitration provision. There is a strong presumption in favor of arbitration when construing the scope of an arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The Supreme Court has held that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Comm's Workers of America*, 475 U.S. 643, 650 (1986) (citation omitted); *see* also *DBGS, LLC*, 775 S.E.2d 283, 285 (Ga. Ct. App. 2015) (noting that if the allegations underlying a plaintiff's claims "touch matters" covered by the parties' agreement, "then those claims must be

arbitrated").

Here, the arbitration provision of both enrollment agreements covers "all disputes, claims, or controversies arising out of or relating in any way to the Enrollment Agreement or Plaintiff's application or enrollment at NU." Ex. A-1 & A-2 at 9. Plaintiff's action specifically defines this action as being "brought on behalf of all persons in the United States who purchased a degree program and/or course offered by National University" during a specified period of time. Compl. ¶ 1. These claims undisputedly relate to such persons' agreement to the applicable enrollment agreement and/or their application or enrollment at NU.

**C. NU has not waived its right to arbitrate.**

This Motion is timely because NU has moved to compel arbitration prior to filing a responsive pleading and before the parties engaged in any discovery. Courts in this Circuit evaluate whether a party has waived its right to arbitration on a case-by-case basis and consider factors such as diligence or a lack thereof. *Compare Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004) (a motion to dismiss or transfer venue does not constitute waiver of the right to arbitrate) *with Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390-91 (7th Cir. 1995) (concluding that by proceeding to discovery and preparing for trial, the defendant had chosen to invoke the judicial process rather than seek arbitration, and the right to arbitrate was thereby waived). As this Motion is filed prior to the filing of a responsive pleading, NU has not waived its right to arbitrate the Complaint.

**II. Plaintiff waived her right to participate in class action litigation as a part of the arbitration agreement.**

Both the 2023 and 2024 Enrollment Agreement provide that "any disputes shall be arbitrated on an individual basis only, and the parties waive any right to pursue or participate in a class, collective, or representative action." Ex. A-1 & A-2 at 9. They further state that "the

enforceability of this class-action waiver shall be decided exclusively by a court." *Id.* That provision is fully enforceable under the FAA and controlling Supreme Court precedent: The Supreme Court has repeatedly held that agreements requiring individualized arbitration must be honored notwithstanding state law or policy preferences. *See Concepcion*, 563 U.S. at 347-48 (state rule invalidating class waivers is pre-empted); *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-34 (2013) (same under federal antitrust laws); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1623-24 (2018) (same in employment context).

"The availability of class or collective arbitration involves a foundational question of arbitrability: whether the potential parties to the arbitration agreed to arbitrate." *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018). "Questions of arbitrability involve 'gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013). Contracting parties may allocate gateway issues between court and arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Here, both the 2023 and 2024 Enrollment Agreement expressly reserve class-waiver enforceability to "a court of competent jurisdiction." Because the parties specifically reserved the "sole and exclusive authority to interpret or enforce th[e] prohibition on joinder and consolidation and the class, representative and collective action waiver" for a court —and not for the arbitrator— this Court must decide that gateway issue first. *See* Ex. A-1 & A-2 at 9. The Supreme Court has already supplied the answer: class waivers are enforceable "notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 347-48; *see also Italian Colors*, 570 U.S. at 233-34 (enforcing class-action waiver even where individual arbitration was alleged

to be economically impracticable, reaffirming FAA supremacy); *Epic Systems*, 138 S. Ct. at 1623-24 (upholding employment arbitration agreement's class- and collective-action waiver and rejecting argument that the NLRA overrides the FAA). Accordingly, this Court should strike the putative class claims and require Plaintiff to pursue any remaining dispute solely through the individual arbitration to which she agreed.

## CONCLUSION

For the foregoing reasons, the Court should enforce the parties' arbitration agreement and class-action waiver, dismiss the class allegations, and compel Plaintiff to pursue her claims in binding individual arbitration.

Dated: May 29, 2025.

Respectfully submitted,

By: *s/Eric P. Mathisen*
One of the Attorneys for Defendant,
**National University**

Eric P. Mathisen, IN Bar No. 19475-71
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
56 S. Washington St., Suite 302
Valparaiso, IN 46383
Phone: 219-242-8666
Fax: 219-242-8669
eric.mathisen@ogletree.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on May 29, 2025 the foregoing Motion was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to all parties of record.

By: /s/Eric P. Mathisen