**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNIVERSITY,<br><br>Defendant. | Case No. 1:25-cv-03498<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Jeffrey T. Gilbert |

## PLAINTIFF'S MOTION TO COMPEL NATIONAL UNIVERSITY'S DISCOVERY RESPONSES

Pursuant to Fed. R. Civ. P. 37, Plaintiff Janielle Dawson ("Plaintiff"), through counsel, respectfully requests that the Court enter an order compelling Defendant National University ("Defendant") to: (a) provide fulsome answers to Plaintiff's Interrogatory Nos. 3-7 and 13; (b) provide proper responses and produce documents responsive to RFP Nos. 10-12; and (c) produce witnesses prepared to testify on all Fed. R. Civ. P. 30(b)(6) deposition topics, including Topic Nos. 2-7 and 11. In support of this motion, Plaintiff states as follows:

## INTRODUCTION

This is a straightforward case regarding a student who enrolled in an online degree program at National University. Unbeknownst to Plaintiff, Defendant integrated various third-party tracking technologies into its online properties that resulted in her sensitive and confidential communications via those online properties being intercepted by, and disclosed to, third parties such as Meta Platforms, Inc. and Google LLC. Among the information that was intercepted and/or disclosed was Plaintiff's video-watching behavior.

Rather than responding to Plaintiff's complaint, Defendant moved to compel arbitration, contending Plaintiff agreed to arbitrate her claims when she enrolled at National University. Omitted from Defendant's motion was any reference to a broad exclusion contained within the purported arbitration provision (the "Arbitration Exclusion"). That exclusion makes clear that a person, such as Plaintiff, may file a lawsuit concerning Defendant's acts or omissions regarding its provision of educational services for which the person obtained a federal loan:

> We agree that neither we nor anyone else will use this agreement to stop you from bringing a lawsuit concerning our acts or omissions regarding the making of the Federal Direct Loan or the provision by us of educational services for which the Federal Direct loan was obtained. You may file a lawsuit for such a claim.

Dkt. 17-2 (2023 Enrollment Agreement) at 11[1]; Dkt. 17-3 (2024 Enrollment Agreement) at 11.

Based, in part, on the Arbitration Exclusion, Plaintiff sought and was granted arbitration-related discovery on three broad topics, namely: (a) the exception in the arbitration agreement regarding the making of the federal [direct] loan or the provision of educational services for which the direct loan was obtained; (b) whether Plaintiff agreed to arbitrate; and (c) the content of Defendant's affidavit attached to its motion to compel. In response to Plaintiff's subsequent discovery requests, Defendant largely stonewalled. Plaintiff's attempts to resolve the parties' disputes through the meet and confer process were unsuccessful, prompting this motion. Dkt. 29.

This motion seeks to compel Defendant to: (a) provide fulsome answers to Interrogatory Nos. 3-7 and 13; (b) provide proper responses and produce documents responsive to Request for Production ("RFP") Nos. 10-12; and (c) designate appropriate witnesses to testify regarding each Fed. R. Civ. P. 30(b)(6) examination topic described by Plaintiff, including Topic Nos. 2-7 and 11. Each of these requests and topics is relevant to Defendant's motion to compel arbitration and

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers, unless the citations are to transcript pages.

the three broad categories of discovery permitted by the Court. Thus, the Court should grant this motion in its entirety.

**OVERVIEW OF PLAINTIFF'S DISCOVERY AND THE DISCOVERY DISPUTES**

On November 21, 2025, Plaintiff served interrogatories and requests for production on Defendant. Exhibits 1-2. On December 21, 2025, Plaintiff noticed Defendant's Fed. R. Civ. P. 30(b)(6) deposition and set forth the various topics of examination. Exhibit 3.

Defendant served: (a) written responses to the interrogatories and requests for production on January 5, 2026 (Exhibits 4-5); and (b) amended written responses on February 3, 2026 (Exhibit 6-7). Defendant served email objections to the Rule 30(b)(6) deposition notice on January 26, 2026. Exhibit 8.

Pursuant to Local Rule 37.2, the parties met and conferred by videoconference on January 16, 2026 regarding Defendant's initial discovery responses. *See* Exhibit 9 (email chain) at 8-11. The parties further met and conferred by videoconference on February 6, 2026 to discuss Defendant's amended written discovery responses and objections to Plaintiff's Rule 30(b)(6) deposition topics. *See* Exhibit 10 (email chain) at 14-15. Despite the parties' good-faith efforts, they were unable to resolve the discovery disputes set forth in this motion.[2]

**ARGUMENT**

The Court should grant this motion because the information and testimony Plaintiff seeks to compel, as described herein, is relevant and proportional to the needs of the case and within the scope of arbitration-related discovery that the Court has permitted. *See* Fed. R. Civ. P. 26(b)(1);

---

[2] On February 22, 2026 at 8:45 p.m., the eve of this motion being due, Defendant's counsel sent a lengthy email indicating a willingness to resolve some of the issues. Given the timing of the email, and Defendant's past failures to follow through on it promises, *see* § III, *infra*, Plaintiff has moved forward with this motion. To the extent Defendant resolves some of the issues, the parties will inform the Court.

*see also Batchelor v. City of Chicago*, 2020 WL 13647794, at *2-3 (N.D. Ill. Nov. 17, 2020); *Grayson v. City of Aurora*, 2013 WL 6697769, at *2 (N.D. Ill. Dec. 19, 2013).

## I. Defendant Improperly Asserts Boilerplate Objections (Rog. Nos. 3-7, 13 / RFP Nos. 10-12 / Topic Nos. 2-7, 11).

Defendant's discovery "responses" are notable for their improper use of boilerplate objections. The examples below are indicative of the boilerplate nature of Defendant's objections:

> Defendant asserts the Objections. Defendant further objects on the basis that the Interrogatory is compound, overly broad, vague, and unduly burdensome. In addition, discovery was permitted as to the three limited topics in the Court's ECF entry. The interrogatory exceeds that limitation and scope and is not relevant or proportional to the issues raised in the Motion to Compel Arbitration. Plaintiff is improperly seeking merits discovery. Ex. 6 at 4-5 (Answer to Rog. No. 3).
>
> Defendant asserts the Objections. Defendant further objects on the basis that the Interrogatory is compound, overly broad and unduly burdensome and would include attorney/client privileged communications, work product, and the mental impressions of Defendant's counsel. In addition, discovery was permitted as to the three limited topics in the Court's ECF entry. The Request exceeds that limitation and scope and is not relevant or proportional to the issues raised in the Motion to Compel Arbitration. Plaintiff is improperly seeking merits discovery. Ex. 7 at 11 (Response to RFP No. 12).
>
> The topics are overbroad and beyond the scope of the three limited topics in the Court's ECF entry. The topics seek testimony that is not relevant or proportional to the issues raised in the Motion to Compel Arbitrations and improperly seek merits discovery. Ex. 8 at 2 (Objections to Topics 3 and 4).

"[B]oilerplate objections serve no productive purpose in the discovery process." *Loughnane v. Zukowski, Rogers, Flood & McArdle*, 2019 WL 13073480, at *5 (N.D. Ill. Dec. 2, 2019). When a party asserts boilerplate objections, it is as if the party asserted no objections at all. *Id.* A party asserting objections has the burden to show why a specified request is improper. *Id.* A party cannot meet that burden by reflexively invocating a baseless litany of unsupported objections. *See id.*

Here, Defendant almost exclusively asserts boilerplate objections without any factual support. Each boilerplate objection is improper and should be overruled by the Court. Further, the Court should require Defendant to provide amended discovery responses and produce responsive documents that do not take any of the boilerplate objections into account. Similarly, the Court should require Defendant to produce a witness to testify on each of Plaintiff's Rule 30(b)(6) deposition topics without regard to the improper objections.

## II. Defendant Has Failed to Properly Respond to Discovery Regarding Its "Educational Services" (Rog. Nos. 5-7 / RFP No. 8 / Topic Nos. 3, 6-7).

The Arbitration Exclusion expressly states that Plaintiff may file a lawsuit concerning Defendant's acts or omissions regarding "the provision [by Defendant] of educational services for which the Federal Direct Loan was obtained."[3] Dkt. 17-3 at 11.[4] Thus, Plaintiff served discovery and set forth deposition topics that sought information, documents and testimony about: (a) the "educational services" Defendant provided to Plaintiff; (b) Plaintiff's student loans; and (c) how the educational services provided by Defendant related to Plaintiff's federal loans. *See* Ex. 1 at Rog. Nos. 5 and 7 (seeking description of educational services provided to Plaintiff and educational services provided to Plaintiff for which a federal loan was obtained), Rog. No. 6 (contention interrogatory asking whether any Federal Direct Loan was unrelated to provision of educational services); Ex. 2 at RFP No. 8 (seeking documents regarding Plaintiff's student loans); Ex. 3 at Topic Nos. 3 and 6 (educational services provided to Plaintiff for which a federal loan was obtained), Topic No. 7 (educational services, if any, that were unrelated to any federal direct loan obtained by Plaintiff).

[3] The enrollment documents do not define "Federal Direct Loan." *See, e.g.*, Dkt. 17-3 at 11. It is undisputed that each federal student loan Plaintiff received via National University was a federal direct loan.
[4] Because the Arbitration Exclusion is the same in the 2023 and 2024 enrollment documents, Plaintiff only cites to one of the documents.

### A. Defendant Did Not Answer the Relevant Interrogatories or Produce All Documents Responsive to RFP No. 8.

Defendant's initial answer to Interrogatory Nos. 5-7 were non-responsive. For instance, in response to Interrogatory Nos. 5 and 7—which seek a description of Defendant's educational services—Defendant provided the nonsensical answer that Plaintiff was "provided with educational services for her degree program." Ex. 4 at 6-7. In response to Interrogatory No. 6—which asks if Defendant contends that the federal direct loans obtained by Plaintiff were unrelated to Defendant's educational services—Defendant did not answer the question. *Id*. at 7.

In its amended interrogatory answers, Defendant improperly asserted new objections, including that "Plaintiff's underlying claims do not concern, and bear no relationship to, the provision of educational services for which any federal student loans, if any were obtained." Ex. 6 at 7, 9; *see Buonauro v. City of Berwyn*, 2011 WL 116870, at *4 (N.D. Ill. Jan. 10, 2011) (time for posing objections is in initial discovery response and failure to do results in waiver absent good cause). While the amended interrogatory answers provided broad examples of the types of educational services Defendant provided—*e.g.*, "postsecondary educational services" which included "online course instruction, graded assessments and academic progress tracking"—Defendant did not state whether those services included Plaintiff's use of prerecorded videos or use of Defendant's online properties. *See id.* at 7. Plaintiff is entitled to this information because application of the Arbitration Exclusion requires an understanding of what educational services Defendant provided to Plaintiff and how they related to her federal student loans.

Defendant's amended interrogatory answers also included the legal argument that Plaintiff's student loans were not related to Defendant's provision of educational services but rather for living expenses. *Id.* at 7-10. In making the legal argument, Defendant ignored that the argument itself directly referenced federal student loans being tied to the "cost of attendance" at

National University. *Id.* at 7-8. This is important because National University's published "cost of attendance" for the current school year includes non-tuition items such as books, materials, equipment, off-campus housing, food and miscellaneous personal expenses.[5] Notably, in response to RFP No. 8, Defendant has not produced its "cost of attendance" documents for the academic years in which Plaintiff attended National University. *See* Ex. 10 at 14-15. Those documents are relevant to the issue of whether Plaintiff's federal student loans were related to educational services provided by Defendant.

**B. The Court Should Compel Defendant's Testimony on Topic Nos. 3, 6 and 7.**

With respect to the deposition topics related to Defendant's educational services (Topic Nos. 3, 6 and 7), Defendant's objections were largely boilerplate, as shown below:

> Topics 2, 3, 6, and 7: The topics are overly broad and beyond the scope of the three limited topics in the Court's ECF entry. The topics specifically seeks [sic] testimony related to non-federal direct loans and educational service for which Federal Direct Loans were not obtained. Thus, they exceed the Court's limitation and scope. The topics seek testimony that is not relevant or proportional to the issues raised in the Motion to Compel Arbitration.
>
> Topics 3 and 4: The topics are overbroad and beyond the scope of the three limited topics in the Court's ECF entry. The topics seek testimony that is not relevant or proportional to the issues raised in the Motion to Compel Arbitration and improperly seek merit discovery.

Ex. 8 at 2. During the parties' meet and confers, they discussed, *inter alia*, the loans subject to discovery. Declaration of Scott R. Drury ("Drury Decl.") ¶ 5. In connection therewith, Plaintiff's counsel agreed to limit the questioning to Plaintiff's Federal Direct Loans which, as stated above, constitute all the loans she received.[6] *Id.*

---

[5] *See* https://www.nu.edu/cost-of-attendance/ (cost of attendance for 2025-2026) (last accessed on Feb. 19, 2026).

[6] This agreement resolved the objection as to Topic Nos. 2, 3, 6 and 7.

**C. The Parties' Competing Definitions of "Educational Services."**

In defense of its improper discovery responses, during the parties' January 16, 2026 meet and confer, Defendant's counsel belatedly objected to the phrase "educational services," contending it was not defined. Drury Decl. ¶ 6. Defendant's counsel later proposed the following convoluted and technical definition:

> "'Provision of educational services' refers to the substantive instructional and academic educational resources provided by the institution that are required by an accrediting agency or a State licensing or authorizing agency and necessary for completion of the student's educational program."

Exhibit 11 (2/5/2026 Perry email). In contrast, Plaintiff stated that the parties should use the common-sense, plain meaning of the phrase, namely, that "educational services" means services of, relating to or pertaining to education. *See* Am. Heritage Dictionary of the English Language (5th Ed.), "Educational." Ex. 10 at 14-15. As discussed further below, Plaintiff's proposal is proper from a contract interpretation standpoint and a scope of discovery standpoint.

**D. The Court Should Compel Defendant to Provide Proper Discovery Responses and to Present a Witness to Testify on Topic Nos. 3, 6 and 7.**

The Court should compel Defendant to: (a) provide proper responses to Interrogatory Nos. 5-7 and RFP No. 8; and (b) present a properly prepared witness to testify on deposition Topic Nos. 3, 6 and 7. As shown above, the discovery directly relates to the Arbitration Exclusion, which is one of the topics for which the Court permitted arbitration-related discovery.

Defendant's belated objection to the phrase "educational services" does not allow it to avoid providing fulsome responses to the requested discovery or presenting a properly-prepared witness to testify on the noticed topics. As a threshold matter, by failing to assert an objection to the phrase in its initial discovery responses, Defendant waived any objection it may have had. *See Buonaro*, 2011 WL 116870, at *4.

Absent waiver, standard canons of contract construction require the use of the common-sense, plain meaning of "educational services." In determining the meaning of a contract, a court should look to the contract's language to ascertain its plain meaning, reading the language in its popular and ordinary sense unless used in a technical sense. *Allen v. Gov't Employees Ins. Co.*, 663 F.Supp.3d 1175, 1179 (S.D. Cal. 2023) (applying California law); *see also Westchester Surplus Lines Ins. Co. v. Stonitsch Constr., Inc.*, 572 F.Supp.2d 946, 949 (N.D. Ill. 2008) (applying Illinois law).[7] To the extent a contract provision is ambiguous, a court should construe the provision against the drafter. *Aung v. Watts*, 2024 WL 5316258, at *5 (C.D. Cal. Oct. 25, 2024); *Owner-Operator Independent Drivers Ass'n, Inc. v. Bulkmatic Transport Co.*, 503 F.Supp.2d 961, 972 (N.D. Ill. 2007).

Here, the phrase "educational services" is unambiguous, and the Court should apply its plain meaning, as proposed by Plaintiff. Notably, even if the phrase is ambiguous, the Court should still apply Plaintiff's interpretation, given that the phrase must be construed against Defendant, the party that drafted the agreements at issue.

While Defendant prefers a complex, technical definition of educational services, nothing in the enrollment agreements indicates the parties intended such a meaning. Defendant cannot credibly contend that Plaintiff—a student—sought to apply a byzantine meaning to the phrase "educational services," and there is nothing in the agreements that indicates otherwise. The phrase was intended to mean, and does mean, educational services related or pertaining to education.

Finally, while Defendant may seek to assert its technical definition of "educational services" in arguing the merits of its motion to compel arbitration, that has no bearing on the

[7] The enrollments agreements that Defendant contends Plaintiff entered into call for California law to apply. *See, e.g.,* Dkt 17-3 at 12. Plaintiff does not concede that the enrollment agreements are validly formed contracts. As such, she cites to both Illinois and California law, each of which is substantively the same on the issue of contract interpretation.

discovery to which Plaintiff is entitled. Here, Plaintiff is entitled to know the full scope of the educational services Defendant provided, using the common-sense meaning of the phrase.

Based on the above, the Court should compel Defendant to: (a) provide fulsome answers to Interrogatory Nos. 5-7; (b) produce all documents responsive to RFP No. 8; and (c) present a witness prepared to comprehensively testify regarding deposition Topic Nos. 3, 6 and 7.

### III. Defendant Has Failed to Properly Respond to Discovery Requests Regarding Plaintiff's Use of Prerecorded Videos and/or Defendant's Online Properties (Rog Nos. 3-4 / RFP No. 10 / Topic Nos. 4-5).

Somewhat related to the issues discussed above, Plaintiff also served discovery seeking information regarding classes, courses and degree programs offered by Defendant that Plaintiff took, purchased or enrolled in that included the use of or availability of prerecorded videos or otherwise required Plaintiff's use of Defendant's online properties. *See* Ex. 1 at Rog. Nos. 3-4; Ex. 2 at RFP No. 10; Ex. 3 at Topic Nos. 4-5. The requests and topics directly relate to the educational services Defendant provided to Plaintiff and are, therefore, relevant to the Arbitration Exclusion.

In its initial written discovery responses, without providing substantive responses, Defendant improperly asserted myriad boilerplate objections to: (a) Interrogatory No. 3—which asks Defendant to identify courses provided to Plaintiff that included the use of prerecorded videos or required the use of Defendant's online properties (Ex. 4 at 5-6); and (b) RFP No. 10—which seeks documents regarding the use of prerecorded videos in with Plaintiff's attendance at National University—. Ex. 5 at 9-10. Defendant also improperly asserted boilerplate objections in response to Interrogatory No. 4—which asks Defendant to identify all degree programs purchased by Plaintiff that utilized prerecorded videos or included online content. Ex. 4 at 6. At the same time, Defendant attempted to limit the scope of the interrogatory to a single online property—namely, Defendant's "Learning Management System" or "LMS." *Id.*

After narrowing Interrogatory No. 4, Defendant provided the non-responsive answer that "Plaintiff's degree programs included courses that involved online content contained on the LMS." *Id.* The answer did not address Defendant's public website or any other online property. *See id.* Moreover, Defendant did not identify any specific degree programs purchased by Plaintiff that included courses with prerecorded videos or online content accessed on any of Defendant's online properties. *See id.*

In its amended responses to Interrogatory No. 3 and RFP No. 10, Defendant merely reasserted its improper objections. Ex. 6 at 5-6; Ex. 7 at 10. Worse, in its amended response to Interrogatory No. 4, Defendant deleted its previous substantive response (however improper) and only asserted improper boilerplate objections. Ex. 6 at 6.

With respect to the related Rule 30(b)(6) topics, Defendant did not object to Topic No. 5. *See* Ex. 8 at 2. With respect to Topic No. 4, Defendant improperly asserted myriad boilerplate objections. *See id.* (overbroad, beyond the scope, irrelevant and disproportional, seeks merits discovery).

Defendant's failure to substantively amend Interrogatory Nos. 3 and 4 was particularly surprising because Defendant's counsel had previously represented to Plaintiff's counsel in writing that they would provide substantive responses. *See* Ex. 9 at 2. Specifically, as to Interrogatory No. 3, Defendant's counsel represented that "[w]e are providing an amended response stating that at least one course involved the use of a prerecorded video." *Id.* With respect to Interrogatory No. 4, Defendant's counsel represented that "[w]e are providing an amended response acknowledging that at least one course involved the use of a prerecorded video." *Id.* Based on those representations, Defendant's counsel stated they did not believe they needed to make a "broader production" in connection with RFP No. 10. *Id.* at 4.

Beyond Defendant's amended responses not including the promised amendments, at the time Defendant served the amendments, it provided no explanation for its failure to fulfill its promises. When confronted by Plaintiff's counsel during a subsequent meet and confer, Defendant's counsel would only state that the client would not sign off on the language. *See* Ex. 10 at 14; *see also id.* at 7 (further trying to justify Defendant's "eleventh hour" "change").[8]

During the same meet and confer, Defendant's counsel suggested that the parties could enter into a stipulation that addressed Interrogatory Nos. 3 and 4. *See* Ex. 10 at 14. However, their subsequent proposal (quoted below) did not fully address the interrogatories, as it: (a) was limited to a single online property—the LMS; (b) did not specifically address the issue of prerecorded videos; (c) did not address online content accessed by Plaintiff; and (d) was contingent on Plaintiff withdrawing deposition Topic Nos. 4 and 5 from the Rule 30(b)(6) deposition notice:

> Plaintiff was enrolled in Defendant's Bachelor of Arts in Psychology degree program and was required to access and use Defendant's Brightspace learning management system ("LMS") for all online courses in which Plaintiff was enrolled. Brightspace is a password-protected institutional learning platform that supports multiple academic and administrative functions, including course delivery, student–faculty communication, assignment submission, grading, and access to course materials. Among the materials accessible within the LMS are audiovisual instructional resources, which constitute one category of content within the platform's broader suite of institutional tools and services. Audiovisual instructional materials were available within each course in which Plaintiff was enrolled as part of the university's integrated educational delivery system.

Ex. 10 at 13-14. Because the proposed stipulation did not answer Interrogatory Nos. 3 and 4 and required Plaintiff to give up her rights to depose Defendant on Topic Nos. 4 and 5, Plaintiff did not agree to it. *Id.* at 13.

---

[8] This is not the first instance of Defendant representing one thing only to later do another. For instance, Defendant once represented to Judge Coleman that it had no objection to arbitration-related discovery, and then later took the position in front of Judge Gilbert that it did object. Dkt. 25-1 (6/2/2025 Tr.) at 2:15-3:17, 3:18-4:4; Dkt. 23, 25-26.

Based on the above, the Court should compel Defendant to: (a) fully respond to Interrogatory Nos. 3-4 and RFP No. 10; and (b) present a properly-prepared witness to testify regarding deposition Topic Nos. 4-5.

**IV. Defendant Refuses to Respond to Discovery Regarding Its Use of Tracking Technologies (Rog No. 13 / RFP Nos. 11-12 / Topic No. 11).**

Interrogatory No. 13, RFP Nos. 11-12 and deposition Topic No. 11 seek information regarding Defendant's integration of tracking technologies within its online properties and the purpose for such integration. Ex. 1 at Rog. No. 13; Ex. 2 at RFP Nos. 11-12; Ex. 3 at Topic No. 11. The requests and the corresponding deposition topic are relevant to the Arbitration Exclusion.

One purpose for tracking technologies is to allow operators of online properties to intercept and analyze visitors' communications and actions while using the properties in order to improve the user experience and provide better functionality.[9] For example, Plaintiff alleges Defendant integrated Google Analytics into its online properties. *See* Dkt. 1 ¶¶ 8, 36, 47. According to Google, Google Analytics compiles intercepted data "into Analytics reports, which you can use to perform in-depth analysis to better understand your customers . . . . Then you can test out new solutions to improve your business."[10] Thus, Defendant's use of tracking technologies is directly related to the issue of Defendant's "acts and omissions regarding . . . the provision [by Defendant] of educational services for which the Federal Direct Loan was obtained." Indeed, the tracking technologies likely are a key component of the provision of Defendant's online educational services, as they likely aided Defendant in its delivery of online content to Plaintiff. Discovery will allow for development of this issue.

---

[9] *See, e.g.*, https://support.google.com/analytics/answer/12159453?hl=en&sjid=6707968645117415411-NC&visit_id=639071593291561880-1824138098&rd=2&ref_topic=14089939 (last accessed on Feb. 19, 2026).

[10] *See, e.g.*, https://support.google.com/analytics/answer/12159453?hl=en&sjid=6707968645117415411-NC&visit_id=639071593291561880-1824138098&rd=2&ref_topic=14089939.

Notwithstanding the relevance of tracking technologies to the applicability of the Arbitration Exclusion, Defendant has steadfastly refused to provide substantive responses to Plaintiff's discovery regarding tracking technologies and has stated that it will not present a witness prepared to testify on the topic. *See* Ex. 4 at 11-12 (asserting boilerplate objections); Ex. 5 at 10-11 (same); Ex. 6 at 13 (same); Ex. 7 at 10-11 (same); Ex. 8 at 2 (same); Ex. 10 at 12. According to Defendant, it need not respond to the requests because it deems them merits related.

Whether Defendant's use of tracking technologies may have some relevance to the merits of the case has no bearing on whether the discovery at issue is relevant to Defendant's motion to compel arbitration and the Arbitration Exclusion – which it is. To the extent discovery confirms Defendant used the tracking technologies in connection with the provision of educational services, the Arbitration Exclusion will apply, and Defendant's motion to compel arbitration will be defeated. To the extent discovery shows Defendant did not use tracking technologies in connection with the provision of educational services, Defendant may have a stronger foundation for its motion. In each scenario, the requested discovery is relevant to the central issue.

## V. The Requested Discovery Is Proportional to the Needs of the Case.

The discovery sought via this motion is proportional to the needs of the case when considering the factors set forth in Fed. R. Civ. P. 26(b)(1): (a) the issue of whether Plaintiff can exercise her right to bring a lawsuit in federal court is critically important; (b) even if the Court only considers the ECPA's statutory damages of $10,000 per violation, 18 U.S.C. § 2520(c)(2), conservatively assuming a class size of 50,000 students, the amount at stake is $500 million; (c) Defendant, as the education provider, has much greater access to the requested information than Plaintiff; (d) Defendant has substantially more resources than Plaintiff, who needed student loans to attend National University; (e) as discussed throughout, the discovery is important to Plaintiff's

ability to respond to the motion to compel arbitration; and (f) the likely benefit of the discovery outweighs any burden or expense associated with producing it.

With respect to (f), while Defendant has repeatedly invoked the "burden" buzzword, it has not provided the required specificity to establish any undue burden. *See Corona v. City of Chicago*, 2023 WL 4665674, at *3 (N.D. Ill. July 20, 2023) (objecting party must show undue burden with specificity). Rather, Defendant has merely asserted the boilerplate objection with no supporting information. As a practical matter, setting forth the educational services Defendant provides, providing information about classes Plaintiff took that involved prerecorded videos or online content and listing the tracking technologies Defendant used should not impose any undue burden on Defendant. Indeed, Defendant likely has spent far more time and resources trying to obstruct and avoid discovery than it would have spent had it just responded to the requests.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion to compel and direct Defendant to: (a) provide fulsome answers to Plaintiff's Interrogatory Nos. 3-7 and 13; (b) provide proper responses and produce documents responsive to RFP Nos. 10-12; and (c) produce witnesses prepared to testify on all deposition topics, including Topic Nos. 2-7 and 11. The Court should also grant any further relief it deems just and reasonable.

Dated: February 23, 2026

Respectfully submitted,

JANIELLE DAWSON, on behalf of
herself and others similarly situated,

By: /s/ Scott R. Drury
SCOTT R. DRURY
*One of the attorneys for Plaintiff*
*and putative class members*

Scott R. Drury
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com

Joshua D. Arisohn (to be admitted *pro hac vice*)
**ARISOHN LLC**
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

**CERTIFICATE OF SERVICE**

I, Scott R. Drury, an attorney, hereby certify that, on February 23, 2026, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Scott R. Drury*
SCOTT R. DRURY