**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNIVERSITY,<br><br>Defendant. | Case No. 1:25-cv-03498<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Karen L. Bass Ehler |

**PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH THE COURT'S APRIL 15, 2026 ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND TO EXTEND THE DISCOVERY CUTOFF DATE**

Pursuant to the Court's June 23, 2026 Order (Dkt. 67), Plaintiff Janielle Dawson ("Plaintiff"), through counsel, respectfully requests that the Court enter an order: (a) compelling Defendant National University ("Defendant") to comply with the Court's April 15, 2026 Order granting Plaintiff's motion to compel (the "Motion to Compel Order" or "Order") (Dkt. 53, 54); and (b) extending the current discovery cutoff date of September 17, 2026 to a date to be set by the Court after Defendant complies with the Motion to Compel Order or, alternatively, to a date twenty-one days after the date set by the Court for Defendant's compliance with the Order. In support of this motion, Plaintiff states as follows:

**INTRODUCTION**

Since the Court entered the Motion to Compel Order, Plaintiff has made extensive efforts to gain Defendant's full compliance with the Order. Defendant has resisted those efforts, opting, instead, for a strategy of delay, concealment, obstruction and misrepresentation. Absent a further Court order, it is clear that Defendant will merely run out the clock.

At issue in this motion is Defendant's failure to comply with the Court's Motion to Compel Order as related to Plaintiff's Request for Production ("RFP") Nos. 11 and 12 and the resulting need to modify the current discovery schedule. With respect to RFP No. 11, the Court ordered Defendant to produce documents sufficient to show each tracking technology installed, integrated and/or embedded within Defendant's online properties. As detailed below, Defendant withheld responsive documents until August 21, 2026, and, in the interim, provided a verified interrogatory answer containing false information regarding the tracking technologies at issue.

With respect to RFP No. 12, the Court ordered Defendant to produce documents sufficient to show the purpose for which each tracking technology identified in response to RFP No. 11 was installed, integrated and/or embedded within Defendant's online properties. To date, Defendant has not produced responsive documents, and it is not known when it will. While Defendant has claimed to be searching for ESI, it is now known that its unilateral, and formerly clandestine, search process was designed to fail. Inexplicably, Defendant created what it deems a "searchable dataset" based on search terms that did not include a significant number of the tracking technologies at issue. Thus, the ESI search process falls victim to the "junk in – junk out" maxim and has only served to waste time.

Notably, other sources of responsive documents seemingly exist. Yet, Defendant refuses to conduct those searches, even though they could be done more efficiently and at a lower cost than searching for ESI. For instance, many tracking technologies are configured and operated by end users like Defendant through something known as a dashboard or events manager. The way in which an end user configures a tracking technology, along with the types of reports the end user generates via those technologies, can provide information directly relevant to and/or sufficient to

show the purpose for which the end user uses the technology. Defendant has repeatedly refused to produce dashboard and/or events manager information.

Because Defendant has not yet complied with the Court's April 15, 2026 Order, Plaintiff is not in a position to take all required depositions. As such, Plaintiff respectfully submits that an extension of the current September 17, 2026 discovery deadline is necessary. Plaintiff also seeks any and all other relief the Court deems just and proper under the circumstances.

## LR 37.2 COMPLIANCE STATEMENT

Pursuant to LR 37.2, the undersigned certifies that after consultation with Defendants' counsel and good-faith attempts to resolve differences, the parties were unable to reach an accord on the issues presented in this motion. The consultations occurred as follows:

| DATE | TIME | PLACE | ATTENDEES |
|---|---|---|---|
| May 11, 2026 | 4:30 p.m. | Videoconference | S. Drury / B. Perry |
| June 17, 2026 | 3:00 p.m. | Videoconference | S. Drury / J. Arisohn / B. Perry |
| June 30, 2026 | 1:00 p.m. | Videoconference | S. Drury / B. Perry |
| July 30, 2026 | 2:00 p.m. | Videoconference | S. Drury / B. Perry |
| August 6, 2026 | ~10:30 a.m. | Dirksen Federal Building | S. Drury / M. Siebert |
| August 18, 2026 | 2:30 p.m. | Videoconference | S. Drury / M. Siebert / T. Wise |
| August 27, 2026 | 10:00 a.m. | Videoconference | S. Drury / M. Siebert / T. Wise |

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

***Procedural History***

Set forth below is a summary of the relevant procedural history of this matter through the the entry of the Motion to Compel Order:

- Plaintiff filed this action on April 1, 2025. Dkt. 1.
- On May 29, 2025, Defendant moved to compel arbitration. Dkt. 17.
- During a June 2, 2025 status hearing, Defendant's counsel represented to Judge Coleman that Defendant had no objection to the parties engaging in arbitration-related discovery. Dkt. 25-1 (6/2/2025 Hr'g Tr.) at 3:18-4:12.[1] Thus, Judge

[1] Citations to page numbers of docketed entries other than transcript page numbers are to the CM/ECF-stamped page numbers.

Coleman referred the case to Magistrate Judge Gilbert for discovery supervision. *Id.*

- Notwithstanding Defendant's June 2, 2025 representation to Judge Coleman, during a June 25, 2025 discovery status hearing, Defendant stated that it opposed arbitration-related discovery. *See* Dkt. 26. Thus, Magistrate Judge Gilbert terminated the referral and sent the case back to Judge Coleman. *See id.*
- During an October 30, 2025 status hearing before Judge Coleman, Defendant agreed to discovery on three broad topics, including "the exception in the arbitration agreement regarding the making of the federal [direct] loan or the provision by Defendant of educational services for which a direct loan was obtained." Dkt. 29.
- On November 21, 2025, Plaintiff served interrogatories and requests for production on Defendant related to the three broad discovery topics. Exhibit 1 (interrogatories); Exhibit 2 (RFPs). In response, Defendant largely stonewalled, claiming the discovery to which it agreed constituted merits discovery.[2]
- On February 23, 2026, Plaintiff moved to compel, *inter alia*, proper responses to RFP Nos. 11 and 12. *See* Dkt. 45, 46, 51.
- On April 15, 2026, the Court granted Plaintiff's motion to compel on the issues discussed herein, subject to a modification to RFP No. 12. *See* Dkt. 54 (4/15/2026 Hr'g Tr.) at 22:9-11, 22:18-22, 50:14-20.

***RFP Nos. 11 and 12***

RFP Nos. 11 and 12 request information regarding Defendant's use of tracking technologies within its online properties:

> **RFP No. 11**: DOCUMENTS sufficient to show each TRACKING TECHNOLOGY installed, integrated and/or embedded within the WEBSITE.[3]

[2] To avoid burdening the Court with unnecessary exhibits, Plaintiff does not attach Defendant's original discovery responses or its first and second amended versions thereof because those were served prior to Plaintiff's motion to compel. Defendant's third amended set of discovery responses are filed herewith as Exhibit 3 (3rd am. interrogatory answers) and Exhibit 4 (3rd am. RFP responses). At the Court's request, Plaintiff will provide the earlier discovery responses, which also are filed on the docket as follows: Dkt. 45-4 (interrogatory answers); 45-5 (RFP responses); 45-6 (am. interrogatory answers); 45-7 (am. RFP responses); 51-1 (2d am. interrogatory answers); 51-2 (2d am. RFP responses).

[3] "TRACKING TECHNOLOGIES" refer to third-party technologies utilized by Defendant within its online properties that allowed the third-parties to surreptitiously intercept Plaintiff's and class members' communications without their consent. Ex. 2 at 5. "WEBSITE" encompasses multiple online properties owned, operated, managed and/or controlled by Defendant, including websites, online portals and mobile applications. *Id.* at 6.

> **RFP No. 12**: For each TRACKING TECHNOLOGY installed, integrated and/or embedded within the WEBSITE, all DOCUMENTS and COMMUNICATIONS CONCERNING the purpose for which the TRACKING TECHNOLOGY was installed, integrated and/or embedded within the WEBSITE. This Request includes but is not limited to DOCUMENTS RELATED TO project management and/or issue tracking tools such as Jira, Asana and Trello.

*See* Ex. 2 at RFP Nos. 11-12.

***The Motion to Compel Hearing and Order***

At the motion to compel hearing, the Court called-out Defendant's counsel for rehashing issues Defendant previously had lost—namely, that arbitration-related discovery was not needed. *See* Dkt. 54 at 3:13-17; *see also id.* at 6:11-12 (finding that "defendant lost its argument that this all should be decided as a matter of law."). The Court observed that Defendant's position was a "reprise of where we were last fall" when Defendant backtracked on its representation that it did not oppose arbitration-related discovery. *Id.* at 3:10-12. Moreover, the Court made clear that it was "not going to hamstring plaintiffs [sic] in their ability to take discovery, to discover their case, discover the way they characterized that case, and whether or not it fits within the arbitration exclusion or not based on defendant's argument that essentially plaintiffs [sic] have no case." *Id.* 7:2-6; *see also id.* at 10:3-5 ("to do what you want done now, I think would unfairly circumscribe plaintiff's ability to discover her case and make her legal arguments in front of Judge Coleman").

The Court ultimately ordered Defendant to produce the following documents by May 29, 2026: (a) documents sufficient to show each tracking technology installed, integrated and/or embedded within the website (RFP No. 11); and (b) documents sufficient to show the purpose for which the tracking technology was installed, integrated and/or embedded within the website (RFP No. 12). *See* Dkt. 54 at 22:9-11, 22:18-22; *see also* Dkt. 56 (order setting production date).

***Defendant's Failure to Comply with the Motion to Compel Order***

On May 29, 2026, Defendant filed an unopposed motion to extend the date for its production of documents responsive to RFP Nos. 11 and 12 from May 29, 2026 to June 12, 2026, claiming it needed additional time "to finish the work necessary to provide" the ordered information. *See* Dkt. 62 ¶¶ 2-3. The Court granted the extension. Dkt. 64.

On June 12, 2026, Defendant did not produce the Court-ordered documents. With respect to RFP No. 11, Defendant provided an interrogatory answer, which is now known to contain false information. To date, Defendant has not produced documents responsive to RFP No. 12.

***Defendant Provided False Information in Response to RFP No. 11***

On June 12, 2026, Defendant ignored the Court's Order requiring the production of documents sufficient to show the tracking technologies utilized by Defendant and, instead, provided a sworn interrogatory answer. *See* Ex. 3 at 14-17, 20. In the interrogatory answer, Defendant represented that it utilized the following tracking technologies at relevant times: (1) Facebook/Meta; (2) Google (DV360/Floodlight); (3) Google Ads; (4) Google Analytics (GA4); (5) Google Analytics (Universal Analytics); (6) Invoca; (7) LinkedIn; (8) Microsoft/Bing Ads; (9) MNTN; (10) TVSquared; (11) Viant; (12) Yahoo/Verizon (Oath); (13) YouTube; and (14) Hotjar. *Id.* at 15-17.

Plaintiff challenged Defendant's decision to provide an interrogatory answer in lieu of producing the Court-ordered documents. *See*, *e.g.*, Dkt. 65 at 4-5 (joint status report describing dispute).[4] In connection therewith, Plaintiff's counsel described specific types of documents that would likely contain the information requested in RFP No. 11—namely, screenshots from software

[4] There is also extensive email correspondence regarding the dispute. At the Court's request/direction, Plaintiff's counsel will provide that correspondence to the Court.

known as a "tag manager," which assists tracking-technology end users with the implementation of tracking technologies. *See id.* at 5.

For months, Defendant strenuously resisted Plaintiff's challenge. On August 21, 2026—over four months after the Motion to Compel Order—Defendant finally relented and produced screenshots from its tag manager. *See* Exhibit 5 (tag manager screenshots). Even then, Defendant contended the produced information did not necessarily show the tracking technologies with which Plaintiff would have interacted. Exhibit 6 (8/21/2026 Siebert letter) at 2. While Defendant initially chose not to disclose which tracking technologies it believed to be relevant (*see id.*), it was immediately apparent to Plaintiff's counsel that the newly-disclosed information was inconsistent with Defendant's sworn interrogatory answer. *See* Exhibit 7 (8/24/2026 Drury email) at 2; Exhibit 8 (8/26/2026 Drury email) at 2; *see also* Exhibit 9 (8/27/2026 Siebert letter) at 2.

Only after extensive correspondence and a meet and confer on August 27, 2026 did Defendant disclose what it claims are the tracking technologies with which Plaintiff reasonably interacted. *See* Exhibit 10 (8/27/2026 list of tracking technologies); *see also* Exhibit 11 (8/27/2026 Drury email) at 2; Ex. 9 at 2. The disclosure was stunning. It revealed: (1) ***twenty-six*** tracking technologies with which Plaintiff reasonably interacted; and (2) the false nature of Defendant's sworn interrogatory answer. *Compare* Ex. 3 at 15-17 with Ex. 10. Beyond the disclosure revealing tracking technologies that were not included in Defendant's interrogatory answer, it also revealed that various tracking technologies set forth in the interrogatory answer were not technologies with which Plaintiff reasonably interacted. *See* Exhibit 12 (comparison of interrogatory answer to 8/27/2026 list of tracking technologies). To date, Defendant has not amended its false interrogatory answer or provided an explanation for providing false information and then waiting months before revealing the truth. Had Plaintiff not steadfastly pursued Defendant's failure to produce the

documents ordered by the Court, this case would have proceeded based on the false, yet sworn, information provided by Defendant.

***Defendant Has Not Produced Documents Responsive to RFP No. 12***

Almost 4.5 months after the Court's Motion to Compel Order, Defendant has yet to produce documents sufficient to show the purpose for which it integrated, installed and/or embedded the tracking technologies at issue. During this period, Defendant claimed to be conducting a search for ESI. Until recently, Defendant refused to provide Plaintiff with any insight into its clandestine search—not identifying custodians, search terms or the media being searched. *See* Ex. 6 at 3 (disclosing ESI search parameters).

The reason for Defendant's secrecy is now known—the purported search for ESI was tainted and designed to fail. In lieu of conducting a proper ESI search, Defendant utilized a "junk in – junk out" search methodology.

On Friday, August 21, 2026 at 8:00 p.m., Defendant provided details of the purported search. *See* Ex. 6 at 3. According to Defendant, it created a "searchable dataset" based on unilaterally-selected search terms that do not include each of the tracking technologies with which Defendant believes Plaintiff reasonably interacted. *See id.* The search terms used by Defendant were: (1) Intercom; (2) Datadog; (3) Snowplow; (4) Articulate; (5) Hotjar; (6) Wrench AI; (7) Wonders AI; (8) Labster; (9) GTM; (10) Google Analytics; (11) Facebook/Meta; (12) Google (DV 360/Floodlight); (13) Google Ads; (14) Invoca; (15) LinkedIn; (16) Microsoft/Bing Ads; (17) MNTN; (18) TVSquare; (19) Viant; (20) Yahoo/Verizon (Oath); and (21) YouTube. *Id.*

Defendant has not explained how it developed the list of search terms, why the list did not include all of the relevant tracking technologies, why the list included irrelevant terms, or why the search phrases seemingly did not follow standard Boolean-search conventions. Based on the

tainted list of search terms, Defendant's "searchable dataset" contained approximately 539,000 documents. *See* Exhibit 13 (8/18/2026 "Search Terms Report"); *see also* Dkt. 80 (8/6/2026 Hr'g Tr.) at 5:5-24 (defense counsel describing "500,000 documents being searched"). Defendant has then sought to extract from that tainted dataset documents related to the actual tracking technologies at issue. *See*, *e.g.*, Ex. 13 (showing search terms); Exhibit 14 (8/21/2026 "Search Terms Report"); Exhibit 15 (8/26/2026 "Search Terms Report"). As Plaintiff has explained to Defendant, the problem with its approach is that the "searchable dataset" was designed to not be inclusive of each of the relevant tracking technologies. *See* Ex. 7 at 2 (analogizing Defendant's approach to creating a "searchable dataset" based on a search for "dogs," when the relevant information is "cats."); *see also* Exhibit 16 (Plaintiff's summary of Defendant's ESI search process revealing Defendant's attempt to search for terms not used in compiling the searchable dataset).

The only way to fix the tainted "searchable dataset" is to create a new and proper dataset. To that end, on August 26, 2026, Plaintiff's counsel proposed, *inter alia*, search terms to be used in a proper search for ESI. *See* Ex. 8 at 3. Defendant has refused to create a new searchable dataset and, instead, continues to produce hit-count reports based on the tainted and largely useless "searchable dataset" it created with no input from Plaintiff's counsel. *See* Ex. 15 (8/26/2026 hit-count report based on searchable dataset of approximately 539,000 documents). At the same time, Defendant has begun to "blame the victim," claiming that Plaintiff is somehow to blame for Defendant's failure to timely and properly search for ESI. *See* Ex. 9 at 2. Defendant's position cannot be reconciled with its exclusion of Plaintiff from the ESI search process.[5]

---

[5] Defendant also strategically disclosed information regarding the ESI search process at times that precluded prompt discussion thereof. *See* Exhibit 17 (8/18/2026 Siebert email attaching hit-count report sent 5 minutes before a scheduled meet and confer); Exhibit 18 (8/21/2026 Siebert email sent at 8:00 p.m. on a Friday night).

Notably, while Defendant was conducting its largely useless search for ESI, it was not searching other document sources for relevant and responsive documents. Plaintiff has specifically asked Defendant to search its dashboards and events managers for relevant and responsive documents. *See* Ex. 7 at 2; Ex. 8 at 3; Ex. 11 at 1. Moreover, Plaintiff has explained why the dashboards and events managers likely contain relevant and responsive documents. *See id.* Despite the requested search being more efficient and less costly than an ESI search, Defendant insists on performing the expensive, time-consuming and uncertain search for ESI. *See* Ex. 9 at 2-3. Defendant's position defies common sense and the Court's Order, which requires the production of documents, not just ESI. While Defendant has pointed to the parties' July 31, 2026 Joint Status Report, which states that Defendant's counsel has agreed, as a first step, to search for ESI (*see* Dkt. 77 at 2; Ex. 9 at 2), that report was prepared before the tainted nature of Defendant's "ESI search" was known to Plaintiff. In all events, based on the current status, no rational reason exists for Defendant's resistance to searching for and producing the requested information.

In short, almost 4.5 months after the Motion to Compel Order, the ESI search process is not much further along than it was at the time of the Order, and Defendant is refusing to conduct more efficient and less-costly searches for relevant and responsive information.

## ARGUMENT

### I. The Court Should Compel Defendant to Fully Comply with Its Order.

Since the Court ruled on Plaintiff's motion to compel, rather than simply complying with the Order, Defendant has delayed, concealed, obstructed and provided false information. It is clear that absent a further Court Order, Defendant will continue to play games to Plaintiff's detriment.

Thus, with respect to RFP No. 11, the Court should Order Defendant to do the following within five days of an order granting this motion: (1) produce any further relevant and responsive

documents; (2) provide sworn statements from Defendant and its counsel that Defendant has fully and completely complied with the Court's Motion to Compel Order, as related to RFP No. 11[6]; (3) provide an amended answer to Interrogatory No. 13 that accurately sets forth all relevant tracking technologies; and (4) award Plaintiff any further relief the Court deems just and proper under the circumstances.

With respect to RFP No. 12, the Court should: (1) set strict deadlines for Defendant to produce all relevant and responsive documents, including but not limited to information from its dashboards and events managers; (2) require Defendant to work with Plaintiff in good faith to develop an ESI search protocol based on proper custodians, search terms and search media and to produce relevant and responsive ESI in accordance with the dates set by the Court; and (3) award Plaintiff any further relief the Court deems just and proper under the circumstances.

## II. Defendant's Noncompliance with the Order Requires Modification of the Discovery Schedule.

Arbitration-related discovery is set to close on September 17, 2026. Dkt. 76. Because Defendant has failed to comply with the Motion to Compel Order, Plaintiff respectfully submits she will not be able to complete all required depositions on or before that date. Specifically, Plaintiff intends to depose Defendant and Nicholas Neiert regarding the tracking technologies discussed throughout this motion. *See* Exhibit 19 (Notice of Depositions). Mr. Neiert is the National University employee Defendant has designated to testify regrading those technologies. Mr. Neiert is also the person who attested to the false information in Defendant's interrogatory answer regarding the tracking technologies at issue. *See* Ex. 3 at 20. Given that Defendant has not yet produced documents responsive to RFP No. 12, and because it is not known for certain whether

[6] In a self-serving letter dated August 21, 2026, Defendant's counsel stated that it deemed its response to RFP No. 11 complete. *See* Exhibit 20 (8/21/2026 Siebert letter). The letter was not verified. Since that time, Defendant has produced additional information, making clear the need for the requested relief. *See* Ex. 10.

Defendant has fully complied with the Court's Order regarding RFP No. 11, it is inconceivable that Plaintiff will be in a position to take Defendant's and Mr. Neiert's depositions by September 17, 2026.[7]

Plaintiff does not seek to modify the discovery schedule for purposes of delay. Indeed, as the notice of depositions shows, Plaintiff has scheduled other depositions for September 15, 16, and 17, 2026. *See* Ex. 22. Moreover, as a compromise, Plaintiff has agreed to take combined individual and Rule 30(b)(6) depositions, even though such a process is not ideal and can lead to depositions in excess of seven hours.[8]

While the current notice of depositions has scheduled Mr. Neiert's and the related Rule 30(b)(6) deposition for September 23, 2026, Plaintiff respectfully submits that the Court should either: (1) set a status conference after the deadline for Defendant to complete its document production to evaluate the volume of documents produced and the time needed to prepare for the depositions; or (2) extend the discovery deadline until twenty-one days after Defendant's completion of its document production, subject to a further extension based on the volume of documents produced by Defendant. Plaintiff's proposal will allow Plaintiff to properly prepare for the important depositions and prevent Defendant from gaining a strategic advantage from its violations of the Court's Order.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should grant Plaintiff's motion and:

---

[7] This conclusion is underscored by the fact that Plaintiff's counsel is scheduled to be out of town from October 2, 2026 through October 12, 2026 for a Court hearing in San Francisco and then celebrating his twenty-sixth wedding anniversary. Had Defendant not failed to comply with the Court's Order, there would be no issue.

[8] The individual depositions will be confined to the arbitration-related discovery topics allowed by the Court, as well as topics that are always relevant—such as credibility—but will not be limited to the Rule 30(b)(6) topics for which Defendant is producing the witness.

**A.** With respect to RFP No. 11, order Defendant to do the following within five days of the Order: (1) produce any further relevant and responsive documents; (2) provide sworn statements from Defendant and its counsel that Defendant has fully and completely complied with the Court's Motion to Compel Order, as related to RFP No. 11; (3) provide an amended answer to Interrogatory No. 13 that accurately sets forth all relevant tracking technologies; and (4) award Plaintiff any further relief the Court deems just and proper under the circumstances;

**B.** With respect to RFP No. 12: (1) set strict deadlines for Defendant to produce all relevant and responsive documents, including but not limited to information from its dashboards and events managers; (2) require Defendant to work with Plaintiff in good faith to develop an ESI search protocol based on proper custodians, search terms and search media and to produce relevant and responsive ESI in accordance with dates set by the Court; and (3) award Plaintiff any further relief the Court deems just and proper under the circumstances; and

**C.** Modify the discovery schedule by either: (1) striking the current September 17, 2026 discovery deadline subject to being reset after an evaluation of the volume of documents Defendant produces in connection with the relief requested herein; or (2) extending the discovery deadline until twenty-one days after Defendant's completion of its document production, subject to a further extension based on the volume of documents produced by Defendant

Dated: August 28, 2026

Respectfully submitted,

JANIELLE DAWSON, on behalf of
herself and others similarly situated,

By: /s/ Scott R. Drury
SCOTT R. DRURY
*One of the attorneys for Plaintiff*
*and putative class members*

Scott R. Drury
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
scott@drurylegal.com

Joshua D. Arisohn (to be admitted *pro hac vice*)
**ARISOHN LLC**
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

## CERTIFICATE OF SERVICE

I, Scott R. Drury, an attorney, hereby certify that, on August 28, 2026, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Scott R. Drury*
SCOTT R. DRURY